UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:08-CV-401-H

KRISTINA M. FREDRICK                                          PLAINTIFF

V.

OLDHAM COUNTY FISCAL COURT, et al.                     DEFENDANTS

V.

LANCE VINCENT                      THIRD PARTY PLAINTIFF /
                                                             DEFENDANT

V.

BOBBY THACKER, et al.                           THIRD PARTY DEFENDANTS

**MEMORANDUM OPINION**

      Plaintiff, Kristina Fredrick ("Fredrick"), brings this action alleging gender discrimination against her former employer, the Oldham County Ambulance Taxing District d/b/a/ Oldham County Emergency Medical Services ("OCEMS"); the Oldham County Fiscal Court; Duane Murner, the Oldham County Judge Executive; David Thompson, President of the OCEMS Board of Directors; the Oldham County Ambulance Services Group, Inc.; Mike Heilman ("Heilman"), in his capacity as former acting director of the OCEMS; and Lance Vincent ("Vincent"), in his capacity as former director of the OCEMS. Defendant Vincent has filed and amended a Third Party Complaint joining Bobby A. Thacker ("Thacker") and Christy Skaggs[1] ("Skaggs") (collectively "Third Party Defendants" or "Defendants"). The matter is before the Court on Skaggs and Thacker's Motion to Dismiss the amended Third Party Complaint. Fed. R. Civ. P.

---

[1] Formerly Christy Link.

12(b)(6). For the reasons set forth below, the Court will sustain in part and deny in part the Third Party Defendants' motion.

**I.**

Plaintiff's original complaint, filed in Oldham County Circuit Court and later removed by Defendants, alleges gender discrimination under the Civil Rights Act of 1964 and under the Kentucky Civil Rights Act. Count III of the complaint specifically alleges that "Lance Vincent, who was then Plaintiff's supervisor, and Director of OCEMS, did knowingly and purposefully make available for distribution to co-workers, city and county officials, email correspondence of a personal nature, in order to manipulate Plaintiff into continuing a physical relationship with him." In his answer, Vincent denied disseminating the e-mails and filed a Third Party Complaint ("Third Party Complaint" or "Complaint"), later amended, alleging that Defendants Thacker and Skaggs were responsible for distributing the sensitive e-mails.

Vincent's amended Third Party Complaint does not describe how Thacker and Skaggs – both employees of an air ambulance service called Stat Care[2] – accessed the e-mails.[3] However, it does allege that Skaggs obtained the e-mails on February 4, 2008, and notified Thacker – the former OCEMS web host – of her find; that Skaggs and Thacker then devised a plan to forward the e-mails to all OCEMS employees; that Thacker altered the e-mails to identify Plaintiff as the sender, and then used the passwords and security controls available to him as web host to authorize a mass distribution of the e-mails to all OCEMS employees;[4] and that Skaggs pressed

---

[2] This company is also called "Sky Care" in Vincent's memoranda.

[3] For the purposes of this Motion, the Court assumes the truth of Plaintiff's factual allegations. *Minger v. Green*, 239 F.3d 793, 797 (6th Cir. 2001) citing *Gao v. Jenifer*, 185 F.3d 548, 552 (6th Cir. 1999).

[4] It is unclear whether the e-mails were also sent to other, non-OCEMS employees.

2

the "send" button. Vincent's Third Party Complaint alleges that these actions constitute conversion, outrage and invasion of privacy, in addition to violating 18 U.S.C. § 2511 and § 2707 to § 2711.

## II.

In deciding a motion to dismiss, a district court must accept as true the plaintiff's well-pleaded facts and draw all reasonable inferences in favor of the complaint. *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003). A complaint may not be dismissed "unless it appears beyond doubt that plaintiff can prove no set of facts in support in support of his claim that would entitle him to relief." *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988) (internal citation omitted). The Court will address each claim in turn.

## III.

Vincent's first allegation is that Thacker and Skaggs violated 18 U.S.C. § 2511, a provision of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520, also known as the federal "Wiretap Act." The Wiretap Act was partially revised by Title I of the Electronic Communications Privacy Act of 1986. "Title I of the Electronic Communications Privacy Act subjects to suit any person who 'intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any . . . electronic communication.'" *Wesley College v. Pitts,* 974 F.Supp. 375, 381-82 (D. Del. 1997) (citing 18 U.S.C. § 2511(1)(a)). "Liability under this aspect of Title I is predicated, then, on an affirmative attempt by the defendant to intercept, or persuade another to intercept, an electronic communication." *Id.* Vincent also references Section 2511(1)(c), which says:

> any person who ... intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral or electronic communication, knowing or

3

> having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection ... shall be subject to suit as provided in subsection (5).

*Id.*

Thus, for Thacker or Skaggs to have violated section 2511(1)(a) or 2511(1)(c), they must have (1) intentionally intercepted an electronic communication, or (2) intentionally disclosed an electronic communication that they knew or had reason to know was intercepted in violation of section 2511. The statute defines an "intercept" as the an "aural or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other device." Though, in layman's terms, the act of accessing and forwarding an e-mail from another's e-mail account could be understood as an "intercept," cases interpreting this term have given the word a much narrower definition. *Global Policy Partners, LLC v. Yessin*, 2009 U.S. Dist. LEXIS 112472, at *15 (E.D.Va. Nov. 24, 2009)(collecting cases); see also *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 876-79 (9th Cir. 2002) (noting that courts "have clarified that Congress intended a narrower definition of 'intercept' with regard to electronic communications" and explaining that the definition does not apply to stored communications); *Steve Jackson Games, Inc. v. U.S. Secret Serv.*, 36 F.3d 457, 464 (5th Cir. 1994)("unlike the definition of 'wire communication,' the definition of 'electronic communication' does not include electronic storage of such communications"); *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 113-14 (3d Cir. 2003); *United States v. Steiger*, 318 F.3d 1039, 1048-49 (11th Cir. 2003) ("textual difference illustrates Congress' intent that one could 'intercept' a wire communication in storage, but could not 'intercept' a similarly situated electronic communication").

The *Global Policy* court held that an interception of an electronic communication happens "only where the acquisition of the communications occurs contemporaneously with its transmission by its sender. Thus, interception includes accessing messages in transient storage on a server during the course of transmission, but does not include accessing the messages stored on a destination server." 2009 U.S. Dist. LEXIS 112472, at *15. The court went on to use a football analogy:

> In American football, a ball can only be intercepted when it is 'in flight.' Once a pass receiver on the offensive team has caught the ball, the window for interception has closed, and defenders can only hope to force a fumble. In essentially the same way, a qualifying 'intercept' ... can occur only where an e-mail communication is accessed at some point between the time the communication is sent and the time it is received by the destination server ... .

*Id.* This Court agrees with this view of the statute's scope. Thus, to bring a Section 2511(1)(a) claim, Vincent must assert that Thacker and Skaggs intercepted the original e-mail transmission, rather than accessing it later while stored in his e-mail account or on a server. Vincent's complaint does not allege this – rather it merely avers that Skaggs obtained e-mails on February 4, 2008 and that Skaggs brought the e-mails to Thacker's attention. Furthermore, Vincent's response memorandum forecloses the possibility of a contemporaneous interception by specifically asserting that the e-mails were obtained days *after* Vincent sent or received them. For these reasons, Vincent has failed to plead sufficient facts to state a claim under 18 U.S.C. § 2511.[5]

## IV.

Vincent also asserts that Thacker and Skaggs violated sections 2701 to 2711 of the

---

[5] Plaintiff's Section 2511(1)(c) claim also requires an improper interception, *and* an allegation that Thacker and Skaggs knew or should have known of it. Because the complaint alleges no improper interception at all, it fails to state a claim under both Section 2511(1)(a) and 2511(1)(c).

Federal Stored Communications Act. 18 U.S.C. § 2701 *et seq.*[6] Section 2701, titled "Unlawful access to stored communications" states:

> whoever (1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished as provided in subsection (b) of this section."

*Id.*

"The general purpose of the ECPA was to create a cause of action against 'computer hackers.'" *Sherman & Co. v. Salton Maxim Housewares, Inc.*, 94 F. Supp. 2d 817, 820 (E.D.Mich. 2000) (quoting *State Wide Photocopy Corp. v. Tokai Financial Services, Inc.*, 909 F.Supp. 137, 145 (S.D.N.Y.1995)). Though Vincent's complaint did not specifically assert that Thacker or Skaggs "hacked" his e-mail account, he did deny that "he made the emails available for distribution." Because it is unclear exactly how Skaggs or Thacker[7] obtained the e-mails and further discovery could answer this question, the Court will deny Defendants' motion to dismiss this claim.[8]

## V.

Vincent also brings a state law conversion claim. The Kentucky Supreme Court

---

[6] Also called Title II of the Electronic Privacy Communications Act.

[7] Vincent's Third Party Complaint does not specifically allege that Thacker obtained his e-mails, rather it says that Skaggs obtained them and then told Thacker about them. Nonetheless, Vincent's response memorandum asserts that discovery is proceeding that would determine whether Thacker or Skaggs hacked into Vincent's account.

[8] Defendants allege that their access was proper or that Vincent consented to their access by leaving his e-mail account open on an OCEMS computer. Vincent asserts that his e-mail was not left open. Discovery is required to resolve this factual dispute.

established the following elements for the intentional tort of conversion: "(1) the plaintiff had legal title to the converted property; (2) the plaintiff had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment; (4) the defendant intended to interfere with the plaintiff's possession; (5) the plaintiff made some demand for the property's return which the defendant refused; (6) the defendant's act was the legal cause of the plaintiffs loss of the property; and (7) the plaintiff suffered damage by the loss of the property." *Ky. Ass'n of Counties All Lines Fund Trust v. McClendon*, 157 S.W.3d 626-32 (Ky. 2005) (quoting C.J.S. Trover and Conversion § 4 (2004); see also *Meade v. Richardson Fuel, Inc.*, 166 S.W.3d 55, 58 (Ky. App. 2005) (citing same factors).

Even assuming Vincent's e-mails could be considered "property" sufficient to state a claim for conversion, his Complaint fails to allege facts sufficient to meet a number of the other factors. Specifically, his allegation that Defendants "forwarded" his e-mails is not sufficient to show that they "exercised dominion over the property in a manner which denied the plaintiffs rights to use and enjoy the property." Forwarding an e-mail also does not constitute "loss" for the purposes of conversion. For these and other reasons, Vincent's conversion claim fails.

## VI.

Vincent also asserts a claim for the tort of outrage, or intentional infliction of emotional distress. It is true, as Defendants urge, that Kentucky courts have set a high bar for the tort of outrage. *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 791 (Ky. 2004) ( "[w]e have set a high threshold for IIED/outrage claims"); see also *Humana of Kentucky, Inc. v. Seitz*, 796

7

S.W.2d 1 (Ky. 1990) (refusing to find outrage where nurse was extremely insensitive to mother of stillborn child). In *Stringer*, the Kentucky Supreme Court said:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Id.* at 789.

Though it appears unlikely that the facts in Vincent's Complaint could constitute the tort of outrage, the Court is not willing to dismiss the claim prior to discovery. At this juncture – without knowing how the e-mails were accessed or what they said – the Court cannot determine whether an average member of the community would deem Skaggs' or Thacker's alleged behavior outrageous. Defendants' motion fails as to this claim.

**VII.**

Vincent's last claim is for invasion of privacy. Kentucky courts have adopted the Restatement (2d) of Torts (1977), which classifies four different types of invasion of privacy: (1) intrusion upon the seclusion of another; (2) public disclosure of private facts; (3) publicity placing a person in a false light; and 4) misappropriation of a person's name or likeness. *See McCall v. Courier-Journal and Louisville Times Company,* 623 S.W.2d 882, 887 (Ky. 1981) (citing Restatement (2d) of Torts §652A). Only the first two types are potentially relevant here. Because Vincent's complaint does not specify which action he intends to bring, the Court will address them both.

To prevail on a claim for intrusion upon seclusion, a plaintiff must show (1) an intentional intrusion by the defendant, (2) into a matter the plaintiff has a right to keep private,

8

(3) which is highly offensive to a reasonable person. *Smith v. Bob Smith Chevrolet, Inc.*, 275 F. Supp. 2d 808, 822 (W.D. Ky. 2003) (citing Restatement (Second) of Torts §625B). To state a claim for public disclosure of private facts, a plaintiff must show that the matter publicized (1) would be highly offensive to a reasonable person and (2) is not of legitimate concern to the public. Restatement (Second) of Torts §625D.

At this stage of the litigation, it is unclear whether Vincent could prevail on a claim either for intrusion upon seclusion or public disclosure of private facts; however, the allegations in his complaint leave open this possibility. Discovery is needed to determine, among other things, whether Defendants' acts were intentional and whether the information disseminated was of legitimate concern to the public. As such, the Court will deny Defendants' request to dismiss the invasion of privacy claim.

The Court will issue an order consistent with this Memorandum Opinion.

cc: Counsel of Record