UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:08-CV-401-H

KRISTINA M. FREDERICK               PLAINTIFF

V.

OLDHAM COUNTY AMBULANCE
TAXING DISTRICT, et al.                DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

  Following the pretrial conference, the Court felt it would be helpful to outline the general scope of proof allowed at trial. The Court has listed below the most pertinent evidence issues discussed at the pre-trial conference; this list provides general guidelines for admissible evidence, subject to developments at trial.

I.

  **Frederick's and Vincent's prior sexual acts**: Generally, the prior sexual relationships of either Vincent or Frederick are generally inadvisable because it does not demonstrate either the consensual or coercive nature of the Vincent/Frederick relationship. However, the fact that Vincent and Frederick shared their sexual history with each other is relevant in that it speaks to the nature of their relationship. The Court will allow limited evidence that the couple shared such discussions solely for this purpose. *See Kessler v. Riccardi,* 363 F.App'x. 350, 358 (6th Cir. 2010). Further details about these relationships will be admissible only if Frederick or Vincent deny one of the relationships.

  Vincent had a sexual relationship with Terry Stock prior to his involvement with Frederick. Frederick knew of it. The Sixth Circuit has found prior incidents of sexual

harassment involving an alleged harasser can be relevant to a case in chief. *Hawkins v. Anheuser-Busch, Inc.,* 517 F.3d 321, 327 (6th Cir. 2008). Frederick's knowledge of the prior relationship could be relevant to the office atmosphere. The Court will consider the admissibility of evidence for this purpose as necessary. The Court may instruct the jury as to the limited use of this category of evidence.

## II.

**Incidents and statements outside of the workplace**: Generally, any such incidents or statements between Frederick and Vincent are relevant and admissible. Incidents and statements outside the workplace involving other employees may be relevant if Frederick knew of them and their probative value outweighs its prejudicial effect. *See Hawkins,* 517 F.3d at 337-38 (noting Frederick was told by another employee that alleged harasser had followed this other employee home).

## III.

**Incidents and statements involving other employees**: Generally, incidents and events of which Frederick was aware during her employment are relevant and admissible because it speaks to the overall environment at OCEMS. This view is supported by *Hawkins,* 517 F.3d at 335. Not all incidents will be admissible. In each instance, relevance depends on several factors and the Court will be mindful of the 403 balancing test with regards to this evidence. Several specific incidents were discussed at the conference. For instance, Defendants would like to bar all reference to employee Skaggs allegedly kissing a sleeping employee; this incident would be more relevant if it had been reported and investigated. The Court's preliminary sentiment is that this incident should not be admissible.

Frederick would also like to discuss two relationships Heilman had with subordinates; these relationships are likely admissible because Heilman was the individual who actually terminated Frederick. Incidents involving Vincent are more relevant and likely admissible. For instance, workplace conversations discussing Vincent's visits to a swingers website or sexually explicit photographs on his work computer are likely admissible.

As to Heilman's relationships with subordinates, the existence of the relationships admissible, but the parties may not explore whether these other relationships were consensual. "When determining the relative weight to assign similar past acts of harassment, the factfinder may consider factors such as the severity or prevalence of the similar acts of harassment, whether the similar acts have been clearly established or are mere conjecture, and the proximity in time of the similar acts to the harassment alleged by the plaintiff." *Hawkins,* 517 F.3d at 336.

IV.

The following is a brief list of specific motions in limine and issues discussed at the pretrial conference not already addressed in this Memorandum Opinion.

1. Defendants suggest that an expert is required to prove causation for a claim for emotional distress. While some states require an expert for emotional distress claims, neither the Sixth Circuit nor Kentucky have such a requirement. *Core Medical, LLC v. Schroeder,* No. 2009-CA-000670-MR, 2010 WL 2867820, at *7 (Ky. App. July 23, 2010) (stating that "[t]he Court also finds that the presentation of expert testimony or the requirement that the plaintiff sought professional help for the emotional distress is not required by law.") and *Turic v. Holland Hospitality, Inc.,* 85 F.3d 1211, 1215 (6th Cir. 1996) (stating "[a] plaintiff's own testimony, along with the circumstances of a particular case, can suffice to sustain the plaintiff's burden in this

regard.").

2. The parties discussed the nature of the gender discrimination and sexual harassment claims. In the previous opinion, the Court found the gender discrimination viable for two different employment actions: Frederick's termination for the "bay area" incident and Frederick, as opposed to Vincent, not being allowed to resign in lieu of termination. These two seem to be the same claim. The Court found Frederick could prove her sexual harassment claim through either quid pro quo harassment (Vincent's suggestion he could make Frederick's probation end, ensure Frederick's promotion to a full time position or Vincent threatening or protecting Frederick's job security all in return for a sexual relationship) or hostile work environment.

3. At the pretrial conference, Frederick agreed to make no arguments regarding Vincent's intent with respect to dissemination of the e-mails between Frederick and Vincent, OCEMS allegedly discriminating against other female employees, other employees filing EEOC claims against OCEMS, racial remarks and e-mails with racial slurs, Defendant having insurance coverage for these claims (unless Defendant argues that taxpayers should not have the burden of paying these claims), or a coworker's plea in a criminal matter several years before Frederick's employment.

4. With regards to discussion of retirement benefits and Henry County EMS terminating Frederick, no damages as a result of Frederick's termination from Henry County can be presented. However, information regarding Heilman's involvement in Frederick's termination from Henry County is relevant and can be presented to demonstrate motive, intent, etc.

5. Frederick will not introduce the transcript of Frederick's March 31, 2008 termination meeting, but will have Frederick testify to her first hand knowledge of that meeting.

6. Geoffrey Stock's suicide is admissible only concerning discussion of it by and between individuals at the workplace, specifically Vincent's response to the suicide. The cause of the suicide and any implications regarding a suicide note are not admissible.

7. The parties discussed the admissibility of Vincent's medical records from his visits with a psychotherapist. Generally, the records are inadmissible. If the records can be authenticated, the Court will consider admissibility for impeachment on a case by case basis.

8. The EEOC Policy Guidance and Enforcement Guidance Manuals are not admissible.

For the reasons stated, and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that, except as dictated by circumstances at trial, the Court intends to rule consistent with this Memorandum Opinion.

IT IS FURTHER ORDERED that Frederick's expert, Ronald E. Missun, is STRICKEN.

cc: Counsel of Record